UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JUNE-ANNETTE CHENN and
SANDRA BONNICK,

        Plaintiffs,

-against-

MTA-NEW YORK CITY TRANSIT
AUTHORITY, MANHATTAN AND
BRONX SURFACE TRANSIT
OPERATING AUTHORITY, and
GREGORY GEORGE,

        Defendants.

**MEMORANDUM AND ORDER**

Case No. 20-CV-2827 (FB) (JAM)

*Appearances:*
*For the Plaintiff*:
LAINE A. ARMSTRONG
Advocates for Justice, Chartered
Attorneys
225 Broadway, Suite 1902
New York, NY 10007

*For the Defendants*:
GENA B. USENHEIMER
VICTORIA VITARELLI
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018

**BLOCK, Senior District Judge:**

    Plaintiffs June-Annette Chenn ("Chenn") and Sandra Bonnick ("Bonnick") (collectively, "the Plaintiffs") brought an employment discrimination action for failure to promote against Defendants MTA-New York City Transit Authority ("NYCTA"), Manhattan and Bronx Surface Transit Operating Authority

1

("MaBSTOA") (collectively, "Transit") and NYCTA Executive Assistant General Counsel Gregory George ("George"), all of whom have moved for summary judgment. For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## I.     BACKGROUND

The following facts are taken from the pleadings, the parties' Rule 56.1 statements, and the supporting documentation. The facts are undisputed unless otherwise noted. The Court construes all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in that party's favor. *See LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005).

During the relevant period, Chenn, a 56-year-old Asian woman, was employed by the NYCTA as an attorney in the Kings Examination and Practice Unit ("Kings Pre-Trial Unit") for 28 years, and Bonnick, a 58-year-old African-American woman, was a litigator employed by MaBSTOA for around four years. In September 2017, NYCTA posted a Job Vacancy Notice ("JVN") for an Assistant General Counsel II ("AGC II") position in the NYCTA Bronx Tort Division to manage litigation, with an emphasis on pre-trial litigation. The AGC II would report to George. Both Chenn and Bonnick applied for the position in November 2017.

Head of the Torts Division Lawrence Heisler ("Heisler"), George, and several others on a panel conducted interviews of six people total, including the two Plaintiffs and Jerry Granata ("Granata"), a 33-year-old white man.  In March 2018, Plaintiffs learned from George that Transit had selected Granata for the ACG II position.  Plaintiffs allege that they were both highly qualified for the position, but Granata had "far inferior qualifications."  Compl. ¶ 33.

In January 2019, both Plaintiffs filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), which issued right-to-sue letters in April 2020.  Plaintiffs commenced this action in June 2020, alleging race, sex/gender, and age discrimination pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 2000e ("Title VII"), *et seq.*, 29 U.S.C. § 621 ("ADEA"), *et seq.*, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

## II.   DISCUSSION

### A. Statute of Limitations for Title VII and ADEA Claims

Defendants argue that because Plaintiffs failed to file discrimination charges with the EEOC within the three-hundred-day window, their Title VII and ADEA claims are time-barred.  As Plaintiffs learned of the decision to promote Granata on March 13, 2018, they had to file a charge with the EEOC by January 7, 2019.  While Plaintiffs did send the EEOC a letter dated and signed on that day, they

3

could not use the online EEOC Public Portal due to a federal government shutdown. The EEOC received the charge via mail on January 11, 2019.

Whether "an administrative claim is deemed to be 'filed' on the date on which the plaintiff puts it in the mail or on the date on which it is stamped 'received' by the applicable administrative agency" is an open question in the Second Circuit, although the Circuit's district courts have often held that a charge is filed when the "EEOC receives the charge and stamps it with the appropriate date." *See Pearson v. City of New York*, No. 20-CV-3592 (RA), 2021 WL 2894776, at *4 (S.D.N.Y. July 9, 2021) (internal quotations omitted) (collecting cases). Regardless of the proper standard and whether the Plaintiffs complied with the EEOC's ambiguous guidance during the government shutdown,[1] Plaintiffs could not use the EEOC Public Portal because of the government shutdown; had they been able to, the EEOC would have received their charge on January 7. And notwithstanding the date the EEOC received the charges, it issued Plaintiffs a right-to-sue letter.

Because of the extraordinary circumstances of the government shutdown, the apparent lack of prejudice to the EEOC's ability to investigate, and Plaintiffs'

---

[1] While the EEOC noted that the time limits for filing a charge of discrimination may not be extended because of the shutdown, it states, "[i]f you are within 30 days of your time expiring, you may file a charge by sending us a letter, which must be dated and signed in writing." Plaintiffs argue that they complied with this guidance by mailing their letter on the day the time limit expired.

reasonable diligence in mailing the letters the day the window lapsed, the Court will not penalize Plaintiffs for the shutdown and deems the claims equitably tolled. *See Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003), *as amended* (July 29, 2003) ("a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply") (internal quotations omitted).

### B. Failure-to-Promote Claims

Plaintiffs clarify that their sole claims are on a failure-to-promote theory and that they have abandoned their §§ 1981/1983 claims against Transit. In addition, the Court summarily dismisses the § 1981 claim against George because § 1983 provides the exclusive remedy against state actors for race discrimination. *See Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) ("§ 1981 does not provide a separate private right of action against state actors."); *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 284 (S.D.N.Y. 2019) (applying *Duplan* to claims against individual municipal employee-defendants in their individual capacity).

### 1. The *McDonnell Douglas* Burden-Shifting Framework

The familiar, three-part *McDonnell Douglas* burden-shifting framework governs Plaintiffs' race, sex/gender, and age claims under Title VII, ADEA, the NYSHRL, and the NYCHRL.[2] *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 109 (2d Cir. 2011) (applying framework to Title VII, ADEA, and NYSHRL claims).

#### i. Prima Facie Case

First, Plaintiffs successfully state a "minimal" prima facie case, *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993), by showing that they "(1) are members of a protected class, race, gender/sex, and age; (2) were qualified for the position at issue; (3) were denied the position; and (4) that the circumstances of

---

[2] While NYCHRL claims are also governed by *McDonnell Douglas*, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs." *Spires v. MetLife Grp., Inc.*, No. 21-2014, 2023 WL 545350, at *1 (2d Cir. Jan. 27, 2023) (failure to promote claim) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)). In other words, courts must generally undertake an independent analysis of NYCHRL claims, separate and apart from the state and federal claims. However, in this case, the Court need not separately analyze the NYCHRL claims because it finds that Plaintiffs have defeated summary judgment under the federal and state statutes that impose a more exacting burden on them. *Cf. Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 58 (1st Dep't 2012) (concluding that complained-of conduct was actionable under the NYCHRL, but not the NYSHRL). For the sake of completeness, the Court will note in passing the relevant NYCHRL standards while considering all the claims together.

the adverse employment decision give rise to an inference of discrimination." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003). For the last element, Plaintiffs successfully establish an inference of discrimination by showing that the employer filled the position with "a person outside the protected class who was similarly or less qualified than the plaintiff." *See Yu v. New York City Hous. Dev. Corp.*, 494 F. App'x 122, 125, n.4 (2d Cir. 2012) (cleaned up); *see also Mitchell v. N. Westchester Hosp.*, 171 F. Supp. 2d 274, 278 (S.D.N.Y. 2001) ("This inference [of discrimination] can be established if the Plaintiff shows that the position sought went to a person outside his protected class.").

### ii. Legitimate Business Reason

Second, Defendants meet their burden by proffering a legitimate, non-discriminatory business reason for promoting Granata over Plaintiffs, that "Granata, among other strengths, had a demonstrated record of embracing and implementing George's model for running E&P and would continue to facilitate further improvements in the Unit." Defs' Mem. L. Supp. Mot. Dismiss 18.

### iii. Pretext

At the third phase of *McDonnell Douglas*, the burden shifts back to Plaintiffs to provide sufficient evidence showing that the reason proffered by the Defendants was pretextual, subject to the applicable causation standard under each statute. *See Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019). For Title VII, race and

gender/sex claims under the NYSHRL, and the NYCHRL,³ plaintiffs must show the "employer's stated non-discriminatory reason was not the exclusive reason for the adverse employment action"; for age discrimination under the ADEA and the NYSHRL,⁴ the plaintiff "must establish that the employer's stated reason would not, alone, constitute a sufficient basis for pursuing an adverse action."  See *Naumovski v. Norris*, 934 F.3d 200, 214-15 (2d Cir. 2019).  Of course, a plaintiff need not establish that the improper consideration was the only but-for cause, as there can be — and often are — "multiple but-for causes" for an adverse employment action.  *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1739 (2020).

The plaintiff must present evidence that "supports a sufficient rational inference of discrimination." *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  Typically, however, because "[e]mployers are unlikely to leave a 'smoking

---

³ These statutes require a plaintiff to establish that an improper consideration was a "motivating factor" for the adverse employment action.  *See* 42 U.S.C. §§ 2000e–2(m) and 2000e-5(g)(2)(B); *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (the NYSHRL's motivating factor standard "appears to be 'equivalent to' the standard" for the NYCHRL).

⁴ These statutes employ the "but-for" causation standard.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) (but-for causation for age discrimination claims under the ADEA); *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (assuming, without deciding, that but-for causation is required for age discrimination under the NYSHRL).  Individual claims against public officials under § 1983 also require but-for causation.  *See Naumovski v. Norris*, 934 F.3d 200, 213 (2d Cir. 2019) (§ 1983 requires but-for causation).

gun' admitting a discriminatory motive," *see Kallinikos v. New York State Dep't of Corr. & Cmty. Supervision*, 481 F. Supp. 3d 76, 85 (E.D.N.Y. 2020), the Court must carefully "review the record 'taken as a whole.'" *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000). And in discrimination cases, "the inquiry into whether the plaintiff's sex (or race, etc.) caused the conduct at issue often requires an assessment of individuals' motivations and state of mind, matters that call for a 'sparing' use of the summary judgment device because of juries' special advantages over judges in this area." *See Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001).

Plaintiffs successfully raise a material issue of fact as to whether Defendants discriminated against Plaintiffs with several types of evidence. *See, e.g., Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 272 (E.D.N.Y. 2013) ("A plaintiff may show pretext by illuminating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons that would raise doubt in the factfinder's mind that the employer did not act for those reasons.").

*A. Evidence Regarding the Applicants' Relative Qualifications*

First, Plaintiffs raise a material issue of fact about the qualifications for the position. Plaintiffs contend that their credentials were far superior to Granata's. A plaintiff may prevent summary judgment based on the discrepancy in

9

qualifications alone, although this burden is "weighty" and requires "the plaintiff's credentials . . . to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001), *superseded in part and on other grounds by* Fed. R. Civ. P. 37(e) (internal quotations omitted); *see also Martinez v. City of Stamford*, No. 22-702-CV, 2023 WL 3162131, at *2 (2d Cir. May 1, 2023) (applying this standard in a failure-to-promote case). However, even if a plaintiff cannot meet her burden on this issue alone, this discrepancy is still probative, as a "reasonable trier of fact is entitled to find that it does bear on the credibility of the employer which must finally be evaluated from the perspective of the entire record." *Byrnie*, 243 F.3d at 104.

On paper, it appears that both Plaintiffs had superior credentials to Granata. At the time of the hiring, Granata had been practicing law for roughly seven years — six as an associate attorney at private law firms and around one-and-a-half years at Transit. By contrast, Bonnick had around twenty-two years of legal experience, including thirteen years as a partner in private practice and around four years at Transit; Chenn had twenty-four years of legal experience, including about twenty-one years at Transit. According to Chenn, George admitted that Granata had "nothing" over her, *see* Chenn Dep. 36:23-37:6, and that George, like Granata,

10

"wasn't the most qualified attorney for that job and the other people who interviewed were more qualified than him," *id.* at 185:10-13.  While the Court is reluctant to conclude that no reasonable person could have selected Granata over Plaintiffs, the discrepancy in their qualifications can be probative of discrimination.  *See Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 78 (2d Cir. 2016).  Here, "it is up to the trier of fact, not the Court at summary judgment, to weigh [the] respective qualifications and decide what inferences to draw."  *Oliphant v. Caldwell*, 212 F. Supp. 3d 480, 487 n.7 (S.D.N.Y. 2016).

Relatedly, there is a disputed issue of material fact as to whether Granata met the minimum qualifications of the AGC II position, which required "two years (2) of managerial or equivalent supervisory experience."  As Granata worked at Transit for only a year and a half at the time he applied, he could not have met the minimum requirement there — in fact, Plaintiffs present evidence that Granata did not have managerial or equivalent supervisory experience in his role as Agency Attorney III at Transit.  *See* Granata Dep. 46:18-48:17 (stating that he was not responsible for managing or supervising anyone "on paper" and that he did not know if his experience counted as "managing or supervising or working situation").

Additionally, Plaintiffs present evidence that before he joined Transit, Granata did not have a supervisory or managerial role in positions as an associate

11

attorney for two private law firms. Specifically, they point to Granata's deposition, where he characterizes his purported supervisory or managerial experience as more akin to an informal mentorship role. *See id.* at 100:4-101:11 (describing his role being one of "the people [new associates] go to with [their] questions" and reviewing billing). Plaintiffs thus raise a material issue of fact as to whether Granata met the managerial or supervisory experience requirement.[5] *See, e.g., Oliphant*, 212 F. Supp. 3d at 487 (S.D.N.Y. 2016) ("plaintiff has put forth evidence that neither Fredericks nor Wager were minimally qualified to be case supervisors"); *Mann v. Mass. Correa Elec., J.V.*, No. 00 CIV. 3559 (DLC), 2002 WL 88915, at *3 (S.D.N.Y. Jan. 23, 2002) (Plaintiff "has raised issues of fact regarding whether [promoted employee] was qualified for the position to which he was promoted.").

### B. Evidence Contradicting Stated Non-Discriminatory Reasons

Plaintiffs have also put forth sufficient evidence from which a reasonable jury could conclude that Defendants' proffered explanation is pretextual. *See*

---

[5] Defendants state that a separate department was responsible for screening applicants to determine whether they met the position's minimum qualifications prior to interview selection. Even if the appropriate department did determine that Granata was qualified — and setting aside Plaintiffs' contention that Heisler and George had pre-selected Granata before the JVN was posted, and thus before they could confirm that he met the minimum qualifications — Granata's limited supervisory and managerial experience would nonetheless buttress Plaintiffs' argument about the applicants' discrepancies in qualifications.

12

*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147-48 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."). Here, Defendants rely on subjective criteria, such as Granata's desire to "make change" and implement George's vision. While there is "nothing unlawful about an employer's basing its hiring decision on subjective criteria," these criteria do not protect the employer "against attacks on its credibility." S*ee Byrnie*, 243 F.3d at 105 (2d Cir. 2001) (internal quotations omitted). Otherwise, "[w]ere it enough for an employer to simply assert that it favored candidate A, who is not a member of a protected group, over candidate B, who is a member of a protected group, many cases of latent discrimination would go undetected and unpunished." *See Garcia v. Regan*, No. 19-CV-8482 (LJL), 2022 WL 912234, at *10 (S.D.N.Y. Mar. 28, 2022).

Challenging Transit's credibility, Plaintiffs raise a disputed issue of fact as to whether Transit pre-selected Granata for the job before it posted the JVN, which would undermine Transit's explanation that it did not promote Plaintiffs in part because of their interview performances. In her deposition, Director of Personnel and Budget for Transit's Law Department Helen Smart stated that, based on her conversation with Heisler, she believed Heisler had selected Granata for the job even before the JVN was posted and thus before Plaintiffs applied. Smart. Dep.

13

65:16-66:21. If true, Smart's deposition suggests that Defendants never actually considered Plaintiffs for the job since they had pre-selected Granata, thereby undermining Transit's narrative and its credibility.

Defendants explicitly dispute that Heisler pre-selected Granata before the JVN was posted and argue, in the alternative, that even if Heisler did, this fact would not establish evidence of discrimination or pretext. While pre-selection alone is generally not enough to raise an inference of discrimination, *see During v. City Univ.*, 01 Civ. 9584(BSJ), 2005 WL 2276875, at *7 (S.D.N.Y. Sept. 19, 2005), it would undermine Transit's stated explanation and could suggest a departure from Transit's usual hiring procedures. *See Reeves*, 530 U.S. at 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."); *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 313 (2d Cir. 1997) (selecting candidate without following usual procedures raises inference that proffered reasons were not the real reasons).

Additionally, Plaintiffs claim that when George informed Chenn that Granata received the promotion, George stated Granata did so because Granata was "like [George]" and "very similar" to him. *See* Chenn Dep. 38:21-39:10; 184:2-25 ("he said that he and Jerry were very similar"). Plaintiffs argue that this statement is evidence of discrimination, as Chenn interpreted this comment to

14

mean that Granata received the promotion because both George and Granata are younger, white men. Defendants dispute that George made this statement.

Whether George made this admission "require[s] a credibility determination that is the province of a jury." *See Cipriano v. Forest Pharms., Inc.*, No. 3:16-CV-01641 (JCH), 2018 WL 11078642, at *8 (D. Conn. Sept. 4, 2018); *Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 274 (E.D.N.Y. 2013) (although co-CEO of defendant company denies making allegedly gender-based statement, "the parties' dispute creates an issue of fact that must be decided by the jury") (citing cases). It is for a jury to interpret the credibility of the witnesses and determine, if George did make the statement, whether it was probative of discrimination.

In sum, through the above evidence, Plaintiffs have offered sufficient evidence for a jury to reasonably conclude that Transit's decision to promote Granata, a much less-experienced attorney, over Plaintiffs, was discriminatory.

  2. *George's Individual Liability Under § 1983, NYSHRL, and NYCHRL*

Defendants move to dismiss the claims against George on the grounds that he did not participate directly in the alleged discriminatory conduct. Under § 1983, an individual can be liable if he is "personally involved in the alleged deprivation," proximately caused the constitutional deprivation, and engaged in intentional

15

discrimination on the basis of a protected characteristic.[6] *See Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). Under both the NYSHRL and NYCHRL, individual liability attaches if a supervisor "actually participates in the conduct giving rise to the discrimination" or any person who "aids, abets, incites, compels, or coerces the doing of any acts forbidden" under the statutes. *See Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (holding that same standards under the NYCHRL and NYSHRL apply and reversing grant of summary judgment as to individual defendants).

Because there is evidence that George was personally involved in the allegedly discriminatory decision, *see* Heisler Dep. 46:10-16 ("But in practice, I listened to the manager to whom Jerry [Granata] had to report," *i.e.*, George); Reid-Green Dep. 79:10-15 (George spoke favorably of Granata during interview process), there is a jury question as to whether George is liable for the decision not to promote Plaintiffs based on unlawful protected categories. *See, e.g., Oliphant*, 212 F. Supp. 3d at 488 (denying summary judgment on § 1983 claim against plaintiff's supervisor).

---

[6] Plaintiffs do not state explicitly whether they bring their claims against George in his individual or official capacity, but as they clarify that they are not bringing any *Monell* claims and argue that George violated § 1983 through his "personal involvement," it is clear to the Court that Plaintiffs bring individual-capacity claims against George.

### III.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.  A jury will determine whether Transit discriminated on the basis of race, gender/sex, or age in failing to promote Plaintiffs and whether George was personally involved in that discrimination.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　__/S/ Frederic Block_____
　　　　　　　　　　　　　　　　　　FREDERIC BLOCK
　　　　　　　　　　　　　　　　　　Senior United States District Judge

Brooklyn, New York
December 26, 2023